

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
KANNAN RAMASAMY,        :
                        :      11 Civ. 3912 (JSR)
          Plaintiff,    :
                        :      OPINION AND ORDER
     -v-                :
                        :
ESSAR GLOBAL LTD. a/k/a ESSAR GROUP, :
                        :
          Defendant.    :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

Plaintiff Kannan Ramasamy brings this action asserting claims of breach of contract against defendant Essar Global Ltd. in connection with the compensation he alleges he is due for his employment as the CEO and COO of Aegis Communications, a fully-owned subsidiary of defendant. Pending before the Court is defendant's motion to stay or dismiss the above-captioned case in favor of arbitration, and to dismiss the case for lack of personal jurisdiction over the defendant and for failure to state a claim. After careful consideration of the parties' briefs and oral arguments, the Court hereby grants defendant's motion and dismisses the case in favor of arbitration.[1]

---

[1] Because the Court has determined the case should be dismissed in favor of arbitration, it does not reach defendant's motion to dismiss for lack of personal jurisdiction or for failure to state a claim. See Sinochem Int'l Co. v. Malaysia Int'l Shipping Co., 549 U.S. 422, 431 (2007) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." (internal citations and quotation marks omitted)). The Court, however, does reject plaintiff's argument that defendant waived its personal jurisdiction defense by waiting to raise personal jurisdiction in its amended motion to dismiss, after already moving to dismiss or stay in favor of arbitration. Compare Amended Motion to Stay or Dismiss, Aug. 15, 2011, with

The pertinent allegations, drawn from plaintiff's Amended Complaint ("Am. Compl."), are as follows. In 2004, plaintiff Kannan Ramasamy was hired by Mr. Ravi Ruia, Vice Chairman of Essar Global Ltd. ("Essar"), to be the Chief Operating Officer ("COO") of Aegis Communications ("Aegis Comm."), one of Essar's many wholly-owned subsidiaries. Am. Compl. ¶¶ 12, 16. Mr. Anshuman Ruia, who served on the board of directors of both Aegis Communications and Aegis BPO Ltd. ("Aegis Ltd."), another wholly-owned subsidiary of Essar, negotiated the terms of plaintiff's employment and compensation. Id. ¶¶ 13, 17-18. In September 2004, plaintiff signed a written employment agreement with Aegis Communications where he agreed to serve as Aegis Communication's COO in exchange for 3.45 million stock options of Aegis Communications common stock, and other consideration. Id. ¶ 19. In September 2005, in exchange for Ramasamy assuming the role of Chief Executive Officer ("CEO") of Aegis Communications, plaintiff and Aegis Comm. entered into a

---

Amended Motion to Stay or Dismiss, Sept. 9, 2011. A defendant does not waive its right to raise a personal jurisdiction defense unless it first files either a responsive pleading or a motion under Rule 12, thereby showing it intends to defend the suit on the merits. See Lane v. XYZ Partners, LLC, 322 F. App'x 675, 678 (11th Cir. 2009) (per curiam). A motion to dismiss or stay in favor of arbitration is not a Rule 12 motion or a responsive pleading that shows the defendant has "accede[d] to the district court's jurisdiction," and thus does not waive the right to later move to dismiss for lack of personal jurisdiction. Gerber v. Riordan, 649 F.3d 514, 519 (6th Cir. 2011).

supplemental employment agreement, whereby Ramasamy was granted an additional 3.45 million Aegis Communications stock options. Id. ¶¶ 20-21.

In early September 2006, Essar decided to convert Aegis Comm., which until then had been a publicly traded company, into a private company before the end of 2006. Id. ¶ 26. Plaintiff was informed by Anshuman Ruia that his stock options would become worthless once the going-private transaction was complete. Id. ¶ 27. "As an inducement for plaintiff to remain with Aegis Comm. during the going-private transaction, and in consideration of the anticipation devaluation" of plaintiff's stock options, Anshuman Ruia, allegedly on behalf of Essar, promised plaintiff a 1% equity stake in Aegis Ltd. in exchange for remaining as CEO and COO during the going-private transaction. Id. After that transaction was completed, in November 2006, plaintiff entered into another agreement with Anshuman Ruia, allegedly on behalf of defendant Essar, which gave plaintiff an additional .25% equity stake in Aegis Ltd. in exchange for remaining with Aegis Comm. as CEO "past September 2007." Id. ¶¶ 32-38.

The Amended Complaint further alleges that, despite plaintiff's fulfillment of the obligations of these contracts, and despite his attempts to obtain the Aegis Ltd. stock transfer agreements on multiple occasions, Essar has not provided him with

3

stock certificates evidencing the transfer of the 1.25% equity interest in Aegis Ltd. that plaintiff alleges he is due. Id. ¶¶ 41-43. Accordingly, on June 8, 2011, plaintiff commenced this action, asserting breach of contract, promissory estoppel, and violation of Chapter 93A of the Massachusetts General Laws[2] arising out of defendant's alleged failure to convey the 1.25% equity stake in Aegis Ltd.

Defendant argues that the Court must stay or dismiss this action in favor of the arbitration clauses in Ramasamy's original employment agreement and his supplemental employment agreement with Aegis Communications (the "Aegis Employment Agreements"). The relevant provision in those agreements reads:

> All claims, disputes, and controversies arising out of or relating to this Agreement or the performance, breach, validity, interpretation, application or enforcement hereof, including any claims for equitable relief or claims based on contract, tort, statute or any alleged breach, default, or misrepresentation in connection with any of the provisions hereof, will be resolved by binding arbitration.

Declaration of Israel E. Kornstein in Support of Defendant Essar Global, Ltd.'s Motion to Stay or Dismiss This Action ("Kornstein Decl.") Exs. B ¶ 13(j), C ¶ 5(k).

Though defendant Essar seeks to invoke the arbitration clause against plaintiff under § 3 of the Federal Arbitration Act, Essar was not a signatory to either employment contract. But

---

[2] Plaintiff Ramasamy is a resident of Massachusetts. Am. Compl. ¶ 2.

4

according to the Supreme Court, "a litigant who was not a party to the relevant arbitration agreement may invoke § 3 if the relevant state contract law allows him to enforce the agreement." Arthur Andersen LLP v. Carlisle, 129 S. Ct. 1896, 1903 (2009). Here, the employment contracts contain a Texas choice of law provision. Kornstein Decl. Exs. B ¶ 13(j), C ¶ 5(j). Accordingly, this Court applies Texas contract law to determine whether the arbitration clause governs this dispute between Ramasamy and Essar. See Sphere Drake Ins. v. Clarendon Nat'l Ins. Co., 263 F.3d 26, 32 n.3 (2d Cir. 2001) (citing Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 477-79 (1989)) (noting Federal Arbitration Act does not preempt choice-of-law clauses).

In particular, since Essar is not a signatory to the Aegis Employment Agreements, it instead seeks to rely on Texas's interpretation of the doctrine of equitable estoppel to force plaintiff to arbitrate his claims. See Meyer v. WMCO-GP, LLC, 211 S.W.3d 302, 305-6 (Tex. 2006) (citing Grigson v. Creative Artists Agency L.L.C., 210 F.3d 524, 527 (5th Cir. 2000)). Under Texas law, equitable arbitration estoppel allows a non-signatory to an arbitration agreement, in limited circumstances, to claim the benefit of the arbitration agreement and force the signatory to

5

the contract to arbitrate the claims against the non-signatory. Grigson, 210 F.3d at 526.

Although defendant intimates that the arbitrator, not this Court, should determine whether equitable arbitration estoppel applies here, Memorandum of Law in Support of Defendant Essar Global, Ltd.'s Motion to Stay or Dismiss This Action ("Def. Br."), at 6 n.2 (citing Contec Corp. v. Remote Solution Co., Ltd., 398 F.3d 205, 211 (2d Cir. 2005)), the Court disagrees. The issue here is whether a defendant may force a plaintiff to adhere to an arbitration clause the defendant did not sign. This is a "gateway matter" that is for the Court to determine. In re Rubiola, 334 S.W.3d 220, 224 (Tex. 2011) ("Whether a non-signatory can compel arbitration pursuant to an arbitration clause questions the existence of a valid arbitration clause between specific parties and is therefore a gateway matter for the court to decide.").

Different states apply different standards for invoking equitable arbitration estoppel. Grigson, 210 F.3d at 527. Texas, having adopted the opinion of the Fifth Circuit in Grigson, applies the "intertwined claims" standard, which allows a non-signatory to compel arbitration in two different circumstances:

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the

existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

Id. (quoting MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999)) (internal citations and quotations omitted; emphasis removed); accord Meyer, 211 S.W.3d at 305-06. In this case, Essar seeks to invoke the first prong of the intertwined claims test — that Ramasamy must "rely on the terms" of his employment agreements with Aegis Communications in order to assert his claim against Essar.

Ramasamy argues that his fight is with Essar, not Aegis, and that the Court need not rely on his contracts with Aegis to resolve this dispute. See Plaintiff Kannan Ramasamy's Opposition to Defendant Essar Global Ltd.'s Motion to Stay or Dismiss ("Pl. Opp. Br.") at 12-17. But his complaint speaks otherwise. The crux of plaintiff's complaint is that the agreement with Mr. Anshuman Ruia promising plaintiff an equity interest in Aegis Ltd. represented a new promise with Essar Global Limited, separate from and wholly independent of Aegis Communications, his employer. Under the Aegis Employment Agreements, Ramasamy was originally going to receive 6.9 million

7

stock options from Aegis Communications in exchange for serving as Aegis's COO, and later CEO from 2004 to 2006. Am. Compl. ¶¶ 19-23. What the complaint also says, however, is that when Ramasamy learned that Essar was taking Aegis Communications private, and that his stock options would be rendered worthless, he agreed to take a 1% equity interest in Aegis Ltd. as compensation both to remain CEO/COO of Aegis Communications during the going-private transaction and "in substitution for the promised, but soon to be worthless, 6.9 million stock options in Aegis Communications." Id. ¶ 28 (emphasis added).

Since this new agreement with Mr. Ruia substituted for plaintiff's original compensation under the Aegis Employment Agreements, the Court cannot resolve the dispute between the parties without "reference to" or "presum[ing] the existence of" those Agreements. Grigson, 210 F.3d at 524 (quoting MS Dealer, 177 F.3d at 947); accord In re James E. Bashaw & Co., 305 S.W.3d 44, 55 (Tex. App. 2009) (citing In re Weekley Homes, L.P., 180 S.W.3d 127, 131-32 (Tex. 2005)). Whether plaintiff is entitled to his compensation under this oral contract purportedly agreed to with Essar depends on whether plaintiff has fulfilled his obligations under his original Aegis Employment Agreements.

The second alleged oral contract for an additional .25% stake in Aegis Ltd. presents a closer call, as that contract was

8

not made "in substitution" for the original stock options. Am. Compl. ¶ 38. But the parties entered into this supplemental oral contract so that plaintiff would "continue" as CEO of Aegis Communications "after September 2007." Id. ¶ 38. The obligations and duties that plaintiff had as CEO arise out of the supplemental employment agreement with Aegis Comm., and again whether plaintiff is entitled to compensation cannot be determined without "reference to" or "presuming the existence" of that agreement. Indeed, the other alleged portions of this second oral contract show that both parties presumed the existence of the original agreements, as plaintiff was also promised (and allegedly received) "a $50,000 increase [in salary] over what he had been paid pursuant to the Aegis Communications employment agreements." Id. (emphasis added). The alleged oral contracts with Essar are not novations and do not cancel the original Aegis Employment Agreements.³ Plaintiff must "rely on the terms" of those original agreements to show he is entitled to compensation.

Indeed, plaintiff's counsel's own submissions to this Court belie his arguments to the contrary. On April 7, 2011,

---

³ Although plaintiff attempted to argue the oral contract with Essar was a novation of the Aegis Employment Agreements in its original opposition brief, see Pl. Opp. Br. at 13-15, plaintiff withdrew this argument in his supplemental opposition brief. See Plaintiff Kannan Ramasamy's Response to Defendant Essar Global Ltd.'s Supplemental Memorandum in Support of Its Motion to Stay or Dismiss ("Pl. Supp. Opp. Br.") at 10.

9

plaintiff's counsel sent a demand letter to Mr. Anshuman Ruia regarding "Stock Options in Aegis Communications Group, Inc. Promised to Kannan Ramasamy." Compl. Ex. A. at 1.[4] In that letter, plaintiff's counsel noted that his firm had been engaged by plaintiff "to assist in the recovery of equity interests promised to him <u>in connection with his employment with Aegis Communications, Inc. (the 'Company')</u>." Id. (emphasis added). The letter repeatedly refers to plaintiff's dispute with "the Company" (i.e. Aegis Communications), and notes that "Mr. Ramasamy has contacted the Company on several occasions to resolve this matter." Id. at 2. The only mention of defendant Essar in this letter is in the address heading to Mr. Ruia, at "Essar House, 11 Kesharvrao Khadye Marg." Id. at 1. This is a dispute arising out of plaintiff's employment with Aegis Communications, a dispute that, in his employment contracts, he agreed to arbitrate. Because plaintiff's claim for compensation on oral contracts, even demanded from defendant Essar and not Aegis Communications, cannot be determined without this Court referencing the Aegis Employment Agreements, equitable estoppel

---

[4] Although plaintiff objects to the Court's consideration of this April 7 letter as not included in the Amended Complaint, see Oral Arg. Tr. at 35:2-10, the Second Circuit has held the appropriate standard of review on a motion where the district court is required to determine arbitrability is a summary judgment standard, not limited to the face of the pleadings. <u>Bensadoun v. Jobe-Riat</u>, 316 F.3d 171, 175 (2d Cir. 2003).

is appropriate here. Plaintiff's claims must therefore be arbitrated.

Where a plaintiff's claims are arbitrable, the typical remedy contemplated by the FAA is to stay the instant action. See 9 U.S.C. § 3. Dismissal, however, is appropriate where "all of the issues raised in the Complaint must be submitted to arbitration." Kowalewski v. Samandarov, 590 F. Supp. 2d 477, 491 (S.D.N.Y. 2008) (quoting Spencer-Franklin v. Citigroup/Citibank N.A., No. 06 Civ. 3475(GBD)(GWG), 2007 WL 521295, at *4 (S.D.N.Y. Feb. 21, 2007)) (internal citations and quotation marks omitted); see also Fedmet Corp. v. M/V BUYALYK, 194 F.3d 674, 678 (5th Cir. 1999). Accordingly, since the Court holds all of plaintiff's claims are arbitrable, the Court hereby dismisses this case, in favor of plaintiff asserting his claims in arbitration against Aegis Communications Group, Aegis BPO Limited, or Essar Global Limited. Additionally, plaintiff's presently pending motion to preclude Essar Global Limited from introducing evidence relating to topics listed in plaintiff's Rule 30(b)(6) deposition notice to Essar Global Limited is likewise dismissed as referable to arbitration. The Court will, however, retain jurisdiction for the limited purpose of adjudicating plaintiff's pending motion for contempt and to enjoin parallel litigation in Texas against Aegis Communications Group, Aegis BPO Limited, Essar Global Limited,

11

and their respective counsel, which, in the Court's view, is entirely separate from the merits hereby referred to arbitration. The Clerk of the Court is therefore directed to close document numbers 7, 8, and 15 on the docket sheet of this case.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated:   New York, New York
         November 21, 2011